**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOSEPH A. VENTO,

Plaintiff-Appellant,

v.

QUICK & REILLY, INC., a New York
corporation,

Defendant-Appellee.

No. 04-1413
(D.C. No. 04-F-290 (BNB))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **BARRETT**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Joseph A. Vento appeals from a district court order denying his motion to vacate an unfavorable decision issued by an arbitration panel for the National Association of Securities Dealers, Inc. (NASD). Although Mr. Vento raised several subsections of the statute governing judicial review of arbitration, *see* 9 U.S.C. § 10(a)(1)-(4), his objections related primarily to the arbitration panel's refusal to hold a hearing and dismissal of his action on the pleadings. The district court granted summary judgment for Defendant Quick & Reilly, Inc. (Q&R). We review the district court's legal determination de novo, *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001), and affirm.

Mr. Vento had a securities account with Q&R that became the subject of garnishment proceedings relating to a state court judgment obtained against him in Colorado. Q&R responded to a writ of garnishment by affirming that it held for Mr. Vento $108,074.42 in a money market fund and $1,300,000 in treasury bills. R. doc. 9, tab 1, ex. 1, at 2. Thereafter, Q&R received an order directing it to pay $93,847.25 to the court clerk, who was to turn the sum over to the party collecting the judgment against Mr. Vento. *Id.*, ex. 3. After Q&R complied, Mr. Vento filed a claim with the NASD arbitration panel contending Q&R violated various legal duties when it revealed his assets and turned them over to the state court clerk.

Mr. Vento claimed that Q&R improperly complied with procedure appropriate in cases where "the garnishee is indebted to the judgment debtor," Colo. R. Civ. P. 103, Sec. 2(g)(1), whereas the proper procedure, he asserted, was for the court to "order the garnishee to deliver such property to the sheriff to be sold as upon execution," with the proceeds applied to the judgment debt and any surplus returned to Mr Vento, because Q&R "possess[ed] or control[led] intangible personal property or personal property capable of manual delivery owned by the judgment debtor." *Id.*, Sec. 2(g)(3). Q&R moved to dismiss the arbitration action, asserting that it had followed a facially valid order and that "[i]f, in fact, there were procedural irregularities in the processing of the garnishment, Mr. Vento should have brought them to the attention of the court." R. doc. 9, tab 6, at 2. In response, Mr. Vento reasserted his position that the order Q&R followed was invalid under Rule 103, but did not claim Q&R had any duty to challenge the garnishment on this basis on his behalf. *Id.*, tab 7. He also contended "[t]here is no provision in the Code of Arbitration Procedure for a motion to dismiss comparable to the one filed by Q&R." R. doc. 9, tab 7, at 2.

After the motion to dismiss was set for hearing, Mr. Vento submitted an "Advisement" stating he would not attend the hearing but would "continue[] to advocate and rely upon" his previously filed response to the motion. *Id.*, tab 8. On the hearing date, the arbitration panel "f[ound] itself in need of additional

-3-

information, and request[ed] an additional brief from each of the parties," on such matters as Q&R's legal duty upon receipt of the garnishment order to investigate its validity, and whether Mr. Vento did anything to challenge the garnishment order himself. *Id.*, tab 9, at 1. The panel noted Mr. Vento's decision to forego attendance at the hearing on the motion to dismiss and "strongly recommend[ed] that [he] secure the advice and services of an attorney experienced in matters involving NASD arbitration." *Id.*, tab 9, at 2. Mr. Vento filed a pro se brief in response to the order.

The arbitration panel saw the dispute framed by the parties as purely legal, concerning the respective duties of a broker-dealer and its client when faced with a garnishment order: "Q&R did not dispute the basic facts alleged by Vento and offered no opinion as to whether the [garnishment] writ was valid or invalid," but defended solely on the ground "that it was Vento's responsibility to dispute the validity of any writ in the underlying court that issued it." Appendix to the Briefs (App.) at 18. The panel agreed with Q&R's position:

> Vento should have disputed the writ by filing a motion to quash with the judge of the same District Court that had allowed its Court Clerks to issue writs of garnishment. If that motion was denied, he could and should have filed a writ of mandamus with the Appeals Court, and, eventually, brought the matter to the attention of the Colorado Supreme Court. . . . [I]t is the duty of the person garnished to file a motion to quash a writ issuing improperly out of a court, or one of its functionaries (ie: the Clerk), if that person feels that the writ or order was issued under improper circumstances. Accordingly we express no opinion as to whether the writ was

invalid, as alleged by Vento, leaving that determination to its proper place in the court system of the State of Colorado.

The duty to timely file a motion to quash and subsequent appellate procedures, relating to an improper garnishment order, properly falls on the shoulders of the person garnished. . . . It appears, however, that Vento was essentially demanding that Q&R either willfully violate what appeared to be a valid garnishment by simply not complying, or to expend attorney's fees and costs to oppose the garnishment by filing a motion on his behalf. That is not within the scope of a broker-dealer's fiduciary duty to its customer.

*Id.* at 18-19. The panel held it was "compelled to find in favor of Q&R as a matter of law," *id.* at 19, and dismissed the case with prejudice pursuant to NASD Code of Arbitration Rule 10305,[1] *id.* at 21-23.

"[A] court may grant a motion to vacate an arbitration award only in the limited circumstances provided in [9 U.S.C. § 10(a)(1)-(4)], or in accordance with a few judicially created exceptions." *Bowen*, 254 F.3d at 932. Mr. Vento invoked

---

[1] NASD Code of Arbitration Rule 10305 provides:

(a) At any time during the course of an arbitration, the arbitrators may either upon their own initiative or at the request of a party, dismiss the proceeding and refer the parties to their judicial remedies, or to any dispute resolution forum agreed to by the parties, without prejudice to any claims or defenses available to any party.

(b) The arbitrators may dismiss a claim, defense, or proceeding with prejudice as a sanction for willful and intentional material failure to comply with an order of the arbitrator(s) if lesser sanctions have proven ineffective.

(c) The arbitrators shall at the joint request of all parties dismiss the proceedings.

several grounds: the arbitration panel "w[as] guilty of misconduct," § 10(a)(3), and "exceeded [its] powers," § 10(a)(4), in cancelling a final adjudicatory hearing and dismissing his case with prejudice on the pleadings when such a disposition is not authorized by Rule 10305; the panel exhibited "evident partiality" (against his pro se status), § 10(a)(2), when it recommended that he consult an experienced attorney; and the panel's decision was in "manifest disregard of the law," *Bowen*, 254 F.3d at 932. *See* R. doc. 1, at 2-5.

As the district court explained, the circumstances presented here did not warrant any interference with the arbitration panel's decision under the "highly deferential standard" that federal courts must employ in this area. *Bowen*, 254 F.3d at 932 (noting standard governing judicial review of arbitration decisions is "among the narrowest known to law" (quotation omitted)). Mr. Vento's primary objection, regarding the lack of authorization for a dismissal on the pleadings under Rule 10305, was explicitly rejected by this court in *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001):

> Although NASD's procedural rules do not specifically address whether an arbitration panel has the authority to dismiss facially deficient claims with prejudice based solely on the pleadings, there is no express prohibition against such a procedure. In addition, NASD's procedural rules expressly provide that "[t]he arbitrator(s) shall be empowered to award any relief that would be available in a court of law." NASD Manual, § 10214. Logically, this broad grant of authority should include the authority to dismiss facially deficient claims with prejudice, and we hold that a NASD arbitration panel has full authority to grant a pre-hearing motion to dismiss with prejudice

> based solely on the parties' pleadings so long as the dismissal does not deny a party fundamental fairness.

Like the plaintiff in *Sheldon*, Mr. Vento "was provided with a fundamentally fair arbitration proceeding in that he was provided with the opportunity to fully brief and argue the motion[] to dismiss." *Id.* at 1207. Given that his "claims [were] facially deficient and [he] therefore ha[d] no relevant or material evidence to present at an evidentiary hearing, the arbitration panel ha[d] full authority to dismiss the claims without . . . holding an evidentiary hearing." *Id.*

Mr. Vento's attempts to avoid the rule of *Sheldon* are plainly meritless. He argues that Q&R's motion to dismiss "was not based on the parties' pleadings as required by [*Sheldon*]," because it rested on the assertion "that Q&R followed an order by a court clerk." Aplt. Br. at 7, 8. But the latter point was not beyond the scope of Mr. Vento's arbitration claims; it was essential to them. The alleged misconduct of Q&R *consisted in* its compliance with the garnishment writ and ensuing order. *See* R. doc. 9, tab 1 & exs. 1, 3. When the arbitration panel concluded that such compliance was proper as a matter of law, dismissal on the pleadings was precisely the appropriate procedural disposition.

Mr. Vento contends the panel's decision was not on the pleadings as in *Sheldon* because the panel's rationale rested on a legal ground omitted from Q&R's motion to dismiss. *See* Aplt. Br. at 7-8. This argument is unavailing. Although Mr. Vento acknowledges the motion asserted Q&R acted properly in

-7-

complying with the garnishment order because Mr. Vento had not challenged it, *see also* R. doc. 9, tab 6, at 2, he insists the panel's rationale–that it was his, not Q&R's, duty to challenge the order–reflects a distinct legal proposition. But the latter is obviously inherent in (if not a mere paraphrase of) the defense advanced by Q&R in its motion and, in any event, the panel's decision clearly encompassed both: "The duty to timely file a motion to quash . . . an improper garnishment order[] properly falls on the shoulders of the person garnished. . . . [E]xpending attorney's fees and costs to oppose the garnishment by filing a motion to quash on his behalf . . . is not within the scope of a broker-dealer's fiduciary duty to its customer." App. at 18-19. The whole point of holding that Q&R was not duty-bound to oppose the garnishment order is to explain why it acted properly in complying with it.

Mr. Vento's accusation of bias on the part of the arbitration panel is equally meritless. The panel's recommendation that Mr. Vento consult with an attorney experienced in NASD arbitration was just prudent advice. There is nothing in the record to suggest any basis for questioning the panel's impartiality.

Turning to the legal substance of the arbitration panel's determination, the general rule is that an arbitrator's "erroneous interpretations or applications of law are not reversible." *Bowen*, 254 F.3d at 932 (quotation omitted). Federal courts review arbitration decisions solely for a "manifest disregard of the law,"

i.e., for a "willful inattentiveness to the governing law." *Id.* (quotation omitted). Thus, in order to justify judicial interference based on the merits of the arbitration decision under review, "the record [must] show the arbitrators knew the law and explicitly disregarded it." *Id.* No showing of this kind is evident here.

As for Mr. Vento's challenge to the validity of the garnishment order under specific provisions of state procedural law, the arbitration panel accepted that premise for purposes of its analysis and therefore cannot be said to have disregarded that law. As for the legal point that was ultimately dispositive of the case, regarding a broker-dealer's duty to challenge garnishment process on behalf of a client, the panel asked Mr. Vento to cite the legal precedent supporting his claim, *see* R. doc. 9, tab 9, at 1, to which he responded only that he "ha[d] researched . . . whether the broker dealer is obligated to investigate the validity of that court order or may it merely accept the order as written, and [had] found no legal precedents about the matter," *id.*, tab 10, at 1. His appellate briefing is likewise deficient.

The only authority cited in connection with Mr. Vento's manifest-disregard-of-law argument are three cases offered for the general proposition that a failure to follow prescribed procedures "is fatal" and invalidates the writ. *Id.* Again, that relates only to the point *accepted* by the arbitration panel. Although two of the cases reflect efforts by a garnishee opposing garnishment, in both cases

garnishment was opposed on the ground that the garnishee *owed nothing to the judgment debtor*. *See Worchester v. State Farm Mut. Auto. Ins. Co.*, 473 P.2d 711, 712 (Colo. 1970) (insurance company answered garnishment by denying coverage for judgment debtor's obligation); *State v. Elkins*, 270 P. 875, 875-76 (Colo. 1928) (state employer answered garnishment by denying that any earnings were owed to judgment debtor). That a garnishee may defend its own interests by denying an obligation to the judgment debtor implies nothing about whether the garnishee may, much less must, defend the interests of the debtor by challenging the propriety of the garnishment itself. Nor is any such implication suggested by Rule 103, which sets out procedures for the debtor to raise objections regarding the garnishment, *see* Colo. R. Civ. P. 103, Sec. 2(f), & Sec. 6, but provides the garnishee with procedures only to admit or deny an obligation to the debtor, *see* Colo. R. Civ. P. Sec. 2(g)(1) & (3) and Sec. 7.

Finally, Mr. Vento's argument that the district court erred by proceeding under Fed. R. Civ. P. 12 and 56 is specious. The civil rules apply in arbitration cases "to the extent that matters of procedure are not provided for in [the federal arbitration] statutes." Fed. R. Civ. P. 81(a)(3). Because the arbitration statutes do not provide procedures to displace Rules 12 and 56, and Mr. Vento offers no "reason why normal procedures should be subverted," the district court properly adhered to these rules. *Milwaukee Typographical Union No. 23 v. Newspapers,*

-10-

*Inc.*, 639 F.2d 386, 390 (7th Cir. 1981); *see Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union*, 24 F.3d 86, 87 (10th Cir. 1994) (noting "we review the grant of summary judgment" in arbitration cases under traditional de novo standard).

### Sanctions

Q&R has moved for sanctions against Mr. Vento. Upon consideration of the motion and Mr. Vento's response (Reply Br. at 1-2), we conclude an award of reasonable attorney fees and costs is warranted under Fed. R. App. P. 38. We agree with Q&R that this appeal is frivolous for the reasons we have discussed. Because deciding on an appropriate amount of fees and costs requires assessment of facts, we remand the matter to the district court for determination.

The judgment of the district court is AFFIRMED. Q&R's motion for sanctions is GRANTED, and the matter is REMANDED for the determination of a proper amount.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

-11-